UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>OMEGA KNIGHT 2, LLC, AVIV MICHAEL HEN, and EREZ HEN,<br><br>Defendants. | Civil Action No. 18-22377-Civ-Scola<br><br>DECLARATION OF PATRICIA GOMERSALL IN SUPPORT OF PLAINTIFF'S MOTION AND SUPPORTING MEMORANDUM FOR AN ORDER OF DEFAULT FINAL JUDGMENT, PERMANMENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS OMEGA KNIGHT 2, LLC AND AVIV MICHAEL HEN |

I, Patricia Gomersall, hereby make the following declaration based upon my personal knowledge:

## I.   BACKGROUND

1. I have been employed as a senior futures trading investigator in the Division of Enforcement ("Division") at the Commodity Futures Trading Commission (the "Commission") since August 1987. I am over 21 years of age and I am stationed at the Commission's Washington D.C. headquarters. I have been the primary investigator with respect to all matters in this case pertaining to Omega Knight 2 LLC ("Omega Knight"), Aviv Michael Hen ("Aviv Hen") and Erez (Eric) Hen ("Eric Hen") (collectively, the "Defendants") since December 2015.

2. My responsibilities as a futures trading investigator include the investigation of registered and unregistered commodity firms, commodity pools, and individuals located throughout the United States in order to ensure compliance with, and enforcement of, the Commodity Exchange Act and the rules and regulations promulgated thereunder. Throughout my career with the Commission, I have routinely reviewed and analyzed internet websites, Commission registration information, customer documents, and financial documents including, but not limited to bank records, trading account documents, and account statements.

3. I understand that the Commission has filed a proposed order of default final judgment against Omega Knight and Aviv Hen. I understand that, as part of the default final judgment, the Commission is asking the Court for civil monetary penalties, disgorgement, and other ancillary equitable relief against Omega Knight and Aviv Hen. I also understand that the Commission entered into a Consent Order for Permanent Injunction with Erez Hen on July 17, 2019.

4. The Commission's counsel has asked me to determine: (a) the corporate status of Omega Knight; (b) the Commission registration status of Omega Knight, Aviv Hen, and Erez Hen; (c) the organization and operations of Omega Knight as a firm that solicited retail customers to engage in off-exchange retail commodity transactions involving leveraged precious metals; (d) the accounts Omega Knight held with two precious metals refineries, including the amount of funds sent to, and received from, these firms; (e) the number of customers who placed funds with Omega Knight, including leveraged and fully paid customers; (f) the dollar amount of deposits from and withdrawals to those customers in bank accounts held by Omega Knight; (g) customer funds used by the defendants for purposes other than metals purchases; (h) claims

made by the defendants on the Omega Knight website; and (i) the current status of Aviv Hen as a member of the armed services of the United States.

## II. RECORDS REVIEWED

5. This declaration is based upon my personal knowledge, informed by my review of documents obtained by the Commission in investigating and prosecuting this case, including the following:[1]

   a. New York state corporate filing information for Omega Knight, from the New York Department of State Corporation and Business Entity database website found at https://appext20.dos.ny.gov/corp_public;

   b. National Futures Association's ("NFA") certifications of no record for Omega Knight, Aviv Hen and Eric Hen;

   c. Information regarding Aviv Hen's registration with the Financial Industry Regulatory Authority ("FINRA");

   d. Bank records, including account statements, opening account documents, deposit information, wire transfers, disbursements and checks of accounts controlled or maintained in the name of Omega Knight from JPMorgan Chase and Wells Fargo banks;

---

[1] Due to the prohibitively large volume of documents I analyzed, I summarized a majority of the documents relevant to my declaration herein. For those documents that are attached, all personal identifying information, such as account numbers and Social Security numbers, have been redacted in accordance with Federal Rule of Civil Procedure 5.2 and Section 6A of the CM/ECF Administrative Procedures. It is important to note that none of the redacted information is substantive in nature or contains narrative descriptions. All documents can be made available to the Court, for review, upon request.

3

e. The website www.omeganite.com ("Omega Knight Website");

f. Documents produced by Republic Metals Company ("RMC") pursuant to a Commission subpoena; and

g. Documents produced by Dillon Gage Metals ("Dillon Gage") pursuant to a Commission subpoena.

### III. FINDINGS

#### A. Corporate Status and Registration of Defendants

6. Omega Knight was a New York limited liability company formed in March 2013 (see Attachment A). Between March 2013 and at least June 2017 (the "Relevant Period"), Omega Knight conducted business from offices in Great Neck, NY, Hallandale Beach, FL and Miami FL. Aviv Hen is the sole Managing Member of Omega Knight, and controls 100% of the contributions and interest in the company.

7. Omega Knight has never been registered with the Commission in any capacity (see Attachment B).

8. Aviv Hen is a resident of Roslyn Heights, New York, and the founder, principal, controlling person, and chief executive officer of Omega Knight. During the Relevant Period, Aviv Hen resided and worked in New York.

9. Aviv Hen has never been registered with the Commission in any capacity (see Attachment B).

10. Eric Hen, the brother of Aviv Hen, was an employee and agent of Omega Knight and its Managing Director, Southeast Territory. During the Relevant Period, Eric Hen resided and worked in Florida.

4

11. Eric Hen has never been registered with the Commission in any capacity (see Attachment B).

12. For most of the period from June 2002 through August 2012, Aviv Hen was registered as a broker-dealer agent with several broker-dealers registered with the Financial Industry Regulatory Authority ("FINRA"). On August 25, 2014, a FINRA Arbitration Panel issued an award ordering Aviv Hen to pay $166,357.87 in compensatory damages to a customer based on claims of, among other things, fraud, unsuitability, and breach of fiduciary duty. On July 13, 2015, FINRA suspended Aviv Hen's registration for failure to comply with an arbitration award or settlement agreement or to satisfactorily respond to a FINRA request to provide information concerning the status of compliance. (Attachment C.)

B. **Omega Knight's Website, www.omeganite.com**

13. Omega Knight registered the website www.omeganite.com in March 2013. The website advertised that Omega Knight offered "stored bullion investing" (described as purchasing bullion and having it stored and fully insured at a secured depository), physical delivery investing (described as allowing Omega Knight to physically deliver precious metal), and tax deferred investing in IRAs and similar vehicles.

14. Omega Knights website also stated that the company did not buy, sell, offer, trade, solicit, or manage any type of commodity futures contracts, rolling spot contracts, or any type of futures trading and futures vehicles (see Attachment D).

C. **Time Frame of Omega Knight's Activity**

15. As more fully discussed below, during the Relevant Period Omega Knight and

5

Aviv Hen conducted business with two different metals companies, and maintained bank records at two different banks.

16. In this declaration, I refer to "Phase I" as the time frame between March 2013 and June 2016, and "Phase II" as the time frame between April 2016 and June 2017.

### D. Omega Knight Accounts with Republic Metals Corporation (Phase I)

17. On or about March 13, 2013, Omega Knight established an account with Republic Metals Corporation ("RMC"), a metals refinery located in Miami, Florida, to purchase and sell precious metals (gold, silver, platinum and palladium) (see Attachment E). Aviv Hen was the sole signatory and contact listed on all account documents with RMC.

18. Beginning on or about March 13, 2013, Omega Knight customers had the choice of purchasing precious metal from RMC through Omega Knight by paying the full price of the metal, along with fees, to Omega Knight and either: (1) having that metal shipped to them directly from RMC; or (2) storing the metal at RMC under Omega Knight's account.

19. On or about March 20, 2014, Aviv Hen contacted RMC in order to establish leveraged metals accounts for Omega Knight customers. On or about August 18, 2014, Aviv Hen entered into an agreement with RMC which enabled Omega Knight to also offer precious metals on a leveraged basis to current and prospective Omega Knight customers (see Attachment F). Aviv Hen requested that RMC allow him to establish a number of additional sub-accounts, all in the name of Omega Knight, in order to "provide better management of individual positions," with the agreement that Omega Knight was responsible for all margin payments, premiums, finance interest and storage charges.

20. Omega Knight customers who purchased precious metals on a leveraged basis deposited only a portion of the full purchase price of the metal with Omega Knight and were then charged monthly storage and finance interest fees by Omega Knight.

21. All funds from Omega Knight customers, for both fully-paid and leveraged precious metals, were deposited into bank accounts in the name of Omega Knight. If an Omega Knight customer wanted to liquidate part or all of its account, RMC sold the metal and sent the funds back to Omega Knight bank accounts. RMC never had any direct interaction with Omega Knight customers, and at no time did any Omega Knight customer ever have an individual account at RMC.

22. On or about April 15, 2016, RMC informed Omega Knight that RMC was ending their business relationship, and Omega Knight liquidated all metals positions and closed all accounts with RMC (see Attachment G).

E. **Omega Knight's Phase I Bank Accounts at JPMorgan Chase**

23. Between March 2013 and June 2016, Omega Knight maintained the following bank accounts at JPMorgan Chase ("Chase") bank (the "Phase I Bank Accounts"). Aviv Hen was listed as the Manager, Member, and signatory of the Phase I Bank Accounts:

| Bank | Acct Number | Name | Date opened | Date Closed |
|---|---|---|---|---|
| Chase | *3961 | Omega Knight LLC | 3/27/13 | 10/4/13 |
| Chase | *2683 | Omega Knight LLC | 3/29/13 | 10/2/13 |
| Chase | *7290 | Omega Knight LLC | 9/30/13 | 12/2/13 |
| Chase | *1293 | Omega Knight LLC | 9/30/13 | 6/29/16 |
| Chase | *2992 | Omega Knight LLC | 11/25/13 | 6/29/16 |

7

24. I examined the Chase bank records covering the period from March 2013 through June 2016, including a line-by-line review of all the credits and debits in each of the Phase I Bank Accounts. This time frame encompasses the period that Omega Knight held accounts at RMC, as previously discussed. Based on my analysis, I was able to determine: (1) the amount of funds received from and paid to customers of Omega Knight; and (2) the amount of funds paid to and received back from RMC. These funds were transferred frequently between all five Chase accounts.

25. I found at least 80 customers deposited a total of $4,535,749 in Chase accounts *3961 and *1293. Ten customers received funds back from accounts *3961, *1293 and *2992, totaling $251,290, resulting in a net figure of **$4,284,459**.

26. I also found that Omega Knight sent customer funds from Chase accounts *3961, *1293 and *2992 to RMC, totaling $2,911,030, and received back from RMC $1,818,421, resulting in a net figure of **$1,092,609** spent on precious metals and fees at RMC.

F. <u>**Omega Knight Account at Dillon Gage Metals (Phase II)**</u>

27. On or about April 28, 2016, as the business relationship with RMC ended, Omega Knight established an account with Dillon Gage Metals ("Dillon Gage"), a metals trading firm located in Addison, TX, to purchase and sell precious metals (gold, silver, platinum and palladium) (see Attachment H). On the opening account documents, Aviv Hen and Adam Rains are listed as the contact persons, and Roselle Ruth Hen (Aviv Hen's wife) is listed as the President of Omega Knight.

28. Omega Knight customers only had the choice of purchasing precious metal from Dillion through Omega Knight by paying the full price of the metal, along with fees, to Omega

Knight and either (1) having that metal shipped to them directly from Dillon Gage, or (2) storing the metal at one of three storage facilities in the United States and Canada. Dillon Gage did not offer for sale precious metals on a leveraged basis.

G. **Omega Knight's Phase II Bank Accounts at Wells Fargo Bank**

29. Between May 2016 and July 2017, Omega Knight maintained the following banks accounts at Wells Fargo ("Wells Fargo") bank ("Phase II Bank Accounts). Aviv Hen was listed as the Manager, Member, and sole signatory of the Phase II Bank Accounts:

| Bank | Acct Number | Name | Date opened | Date Closed |
|---|---|---|---|---|
| Wells Fargo | *4359 | Omega Knight LLC | 5/17/16 | 6/30/17 |
| Wells Fargo | *7729 | Omega Knight LLC | 5/20/16 | 6/30/17 |

30. I examined the Wells Fargo records covering the period from May 2016 through June 2017, including a line-by-line review of all the credits and debits in each of the Phase II Bank Accounts. This time frame encompasses the period that Omega Knight held an account at Dillon Gage, as previously discussed. Based on my analysis, I was able to determine: (1) the amount of funds received from and paid to customers of Omega Knight; and (2) the amount of funds paid to and received back from Dillon Gage.

31. I found at least 12 customers deposited a total of $1,600,273 in Wells Fargo accounts *4359 and *7729. Seven customers received funds back from these accounts totaling $373,071, resulting in a net figure of **$1,227,202**.

32. I also found that Omega Knight sent customer funds from the two Wells Fargo accounts to Dillon Gage, totaling $1,573,872, and received back from Dillion Gage $969,077, resulting in a net figure of **$604,795** spent on precious metals and fees at Dillon Gage.

9

### H. Misappropriation of Customer Funds

33. The table below summarizes customer deposits and funds returned to customers, and funds remitted to and received from Omega Knight accounts with the two metals companies, in the five Omega Knight bank accounts (comprising both the Phase I and Phase II Bank Accounts) during the Relevant Period:

| Bank Accounts | Total Customer Deposits | Returned to Customers | Net Customer Deposits |
|---|---|---|---|
| Chase | $4,535,749.00 | $251,290.00 | $4,284,459.00 |
| Wells Fargo | $1,600,273.00 | $373,071.00 | $1,227,202.00 |
| TOTAL | $6,136,022.00 | $624,361.00 | $5,511,661.00 |

| | Funds Sent | Funds Returned to Omega Knight | Net Spent on Metals |
|---|---|---|---|
| RMC | $2,911,030.00 | $1,818,421.00 | $1,092,609.00 |
| Dillon Gage | $1,573,872.00 | $969,077.00 | $604,795.00 |
| TOTAL | $4,484,902.00 | $2,787,498.00 | $1,697,404.00 |

| | |
|---|---|
| Net Customer Deposits | $5,511,661.00 |
| Net Spent on Precious Metals | ($1,697,404.00) |
| TOTAL | $3,814,257.00 |

34. As this table shows, Omega Knight received a net total of **$5,511,661** from at least 90 customers, but used only $1,697,404, or approximately 31%, of those funds for the purchase of metals and related fees with RMC and Dillon Gage.

35. My analysis of the seven Omega Knight bank accounts revealed that Omega Knight and Aviv Hen used the remaining funds for a variety of expenditures unrelated to their customers' precious metals transactions, including (but not limited to):

|  | From Chase Accounts (Phase I) | From Wells Fargo Accounts (Phase II) | Totals |
|---|---|---|---|
| To Aviv Hen Inc. | $692,955.00 | $56,303.00 | $749,258.45 |
| To Aviv Hen Owned Entities | $245,562.00 | $66,372.00 | $311,934.00 |
| Jewelry and Watch Stores | $128,707.00 | $47,138.00 | $175,845.00 |
| Check and Debit Card Purchases | $128,519.00 | $334,268.31 | $462,787.31 |
| B and B Steakhouse on 9/3/13 | $16,735.00 |  | $16,735.00 |
| Prime 333 |  | $54,518.00 | $54,518.00 |
| Other Restaurants | $12,061.00 | $26,800.00 | $38,861.00 |
| Clothing Stores | $27,913.00 | $29,104.00 | $57,017.00 |
| Travel | $9,161.00 | $133,318.00 | $142,479.00 |
| Sothebys | $57,500.00 |  | $57,500.00 |
| Auto Payments | $116,349.00 |  | $116,349.00 |
| Jetsmarter |  | $28,350.00 | $28,350.00 |
| Eric Hen | $235,316.00 | $31,777.00 | $267,093.00 |
| JDS Holdings/Jeff Snyder | $87,956.00 | $148,269.00 | $236,225.00 |
| ATM Withdrawals | $59,200.00 | $147,352.00 | $206,552.00 |
| Cash Withdrawals | $36,377.00 | $433,584.00 | $469,961.00 |
| Bank Fees | $5,622.00 | $5,839.00 | $11,461.00 |
| Rent Payments | $21,745.00 | $3,500.00 | $25,245.00 |

I.     **Aviv Hen's Status Under the Service Members Civil Relief Act**

36.    Pursuant to the provision of Section 521 of the Servicemembers Civil Relief Act of 1940, as amended, I certify that to the best of my knowledge, information and belief, Aviv Hen is not currently a member of any branch of the military service of the United States as defined in the Servicemembers Civil Relief Act. This belief is based upon the current status report for Aviv Hen available at https://scra.dmdc.osd.mil (see Attachment I).

**I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C., on August 7, 2019.**

_____
Patricia Gomersall