United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Commodity Futures Trading Commission, Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-22377-Civ-Scola |
| Omega Knight 2, LLC, and others, Defendants. | ) ) | |

**Order Granting Motion for Entry of Default Judgement**

Consistent with Federal Rule of Civil Procedure 55(b)(2), Plaintiff Commodity Futures Trading Commission ("CFTC") seeks the Court's entry of a default judgment against Defendants Omega Knight 2, LLC ("Omega Knight") and Aviv Michael Hen ("Aviv Hen"). Previously, the Clerk of the Court entered a default against Omega Knight and Aviv Hen. (ECF No. 15). For the reasons stated below, and good cause having been shown, Plaintiff's motion is **granted** and final judgment by default is **entered** against Omega Knight and Aviv Hen pursuant to Local Civil Rule 7.1 and Federal Rule of Civil Procedure 55(b).

## I.   BACKGROUND

1.   On June 13, 2018, the Commission filed its Complaint for Injunctive and Other Equitable Relief, Restitution, and Civil Monetary Penalties Under the Commodity Exchange Act ("Act") and Commission Regulations ("Complaint") against Defendants Omega Knight, Aviv Hen, and Erez Hen ("Eric Hen") (collectively, Defendants). (ECF No. 1.)[1]

2.   The Complaint alleges that from March 2013 and continuing through at least June 2017 (the "Relevant Period"), Omega Knight, by and through its owner, employees, and agents, including Aviv Hen and Eric Hen, engaged in a scheme to defraud customers located throughout the United States in connection with precious metals transactions. (Compl. ¶ 1.)

3.   The Complaint also alleges that Defendants made numerous false statements to induce customers to enter into leveraged and fully-paid precious metals transactions, and Defendants received at least $5.5 million from at least 90 customers in connection with these transactions. (Compl. ¶ 3.)

---

[1] On July 17, 2019, this Court entered the Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief Against Defendant Erez Hen ("Consent Order") that fully resolved and settled all claims against Eric Hen in the Complaint. (ECF No. 34.)

4.     The Complaint alleges that Defendants' leveraged precious metals transactions never resulted in actual delivery of the full amount of metal purchased to customers.  (Compl. ¶ 4.)  In addition, the Complaint alleges that Defendants used only part of the total funds collected from customers to purchase precious metals for those customers' fully-paid precious metals transactions.  (*Id*.)  Instead, Defendants misappropriated customer funds to pay personal expenses, to distribute purported "profits" and disbursements to other customers, and to fund Omega Knight's operations.  (Compl. ¶ 5.) Through the issuance of false trade confirmations and account statements and other communications to customers, Defendants concealed their misappropriation and fraudulent scheme.  (Compl. ¶ 6.)

5.     Additionally, the Complaint alleges that Defendants' leveraged precious metals transactions constituted illegal, off-exchange retail commodity transactions.  (Compl. ¶ 7.)  The Complaint alleges that Omega Knight acted as an unregistered futures commission merchant ("FCM") by engaging in these transactions without being registered as required by law.  (*Id*.)

6.     The Complaint seeks to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act, and to further enjoin them from engaging in certain commodity-related activities.  (Compl. ¶ 11.)  In addition, the Complaint seeks disgorgement, a civil monetary penalty ("CMP"), restitution, and other remedial ancillary relief.  (Compl. ¶ 12.)

## II.     COMPLAINT ALLEGATIONS AND SUPPORTING EVIDENCE

### A.     Overview of Omega Knight's Fraudulent Precious Metals Scheme

7.     According to the Complaint, the factual allegations of which the Court takes as true for purposes of default judgment, during the Relevant Period, Omega Knight and Aviv Hen solicited customers to enter into fully-paid and leveraged precious metals transactions based on fraudulent misrepresentations.  (Compl. ¶ 30.)

8.     In total, during the Relevant Period, at least 90 customers bought precious metal from Omega Knight either on a fully-paid or leveraged basis. Omega Knight collected at least $5.5 million from these customers.  These customer funds were deposited into bank accounts in the name of Omega Knight that Aviv Hen owned and controlled.  Omega Knight and Aviv Hen then used customer funds for a variety of expenditures unrelated to their customers' precious metals transactions.  (Compl. ¶ 32.)

9.     Omega Knight concealed its misappropriation of customer funds by fraudulently misrepresenting losses and fees incurred by customers. (Compl. ¶ 33.)

10.     Omega Knight's fraudulent scheme involved selling precious metals in three major ways.  First, some Omega Knight customers paid in full for precious metal and took delivery of it.  Second, some customers paid in full for precious metal, but did not take delivery.  For these customers, Omega Knight was supposed to store their precious metals.  Third, Omega Knight's leveraged precious metals customers entered into leveraged precious metals transactions (buying precious metal on a leveraged or financed basis).  Some customers in this third category initially bought precious metals on a fully-paid basis and later were transitioned by Omega Knight to leveraged precious metals investments.  (Compl. ¶ 34.)

11.     Omega Knight's leveraged precious metals customers paid an amount of money *less* than the total value of the metal they were purchasing with the understanding that they would be borrowing from Omega Knight the remainder of the purchase price or otherwise using leverage to buy metal with a value greater than the amount paid to Omega Knight.  Omega Knight did not deliver the full amount of purchased metal to these customers.  Instead, Omega Knight represented that it would store customers' metal for them.  (Compl. ¶ 35.)

12.     Omega Knight charged its leveraged precious metals customers storage fees for the metal and interest on the amount borrowed.  Omega Knight also charged commissions and insurance fees.  (Compl. ¶ 36.)

13.     An Omega Knight website during the Relevant Period advertised that Omega Knight offered stored bullion investing (described as purchasing bullion and having it stored and fully insured at a secured depository), physical delivery investing (described as allowing Omega Knight to physically deliver precious metal), and tax deferred investing in IRAs and similar vehicles.  (Compl. ¶ 37.)

14.     Omega Knight's website also stated that the company did not buy, sell, offer, trade, solicit, or manage any type of commodity futures contracts, rolling spot contracts, or any type of futures trading and futures vehicles.  Omega Knight's statement was misleading and false.  (Compl. ¶ 38.)

15.     In reality, during the Relevant Period, Omega Knight, Aviv Hen in his capacity as controlling person of Omega Knight, and Eric Hen were routinely soliciting customers for, and entering into contracts for, off-exchange leveraged precious metals transactions that are treated as futures contracts under the Act.  (Compl. ¶ 39.)

16.     Omega Knight, through the actions of its employees and agents, including Eric Hen, initially sold metal on a fully-paid basis to some customers, but later persuaded those customers to buy metal on a leveraged basis.  This "bait and switch" tactic benefitted Omega Knight, because when it sold metal

on a leveraged basis it was able to charge storage fees, interest, and insurance, all of which were subtracted from the customer's investment amount. (Compl. ¶ 40.)

17.  Omega Knight, through its employees and agents, including Eric Hen, at times fraudulently misrepresented the amount of these fees and often charged its customers substantially higher fees than were, in reality, incurred. These charges were often excessive.  For example, over a five-month period from December 2014 to April 2015, Omega Knight charged one customer $8,165 in interest, storage fees, commissions, and insurance on a total investment of $48,723.76, almost 17% of the total investment amount. (Compl. ¶ 41.)

18.  Omega Knight, through its employees and agents, including Eric Hen, fraudulently induced some of its leveraged metal customers to invest by making false representations regarding the returns that customers could expect on leveraged metal investments.  (Compl. ¶ 42.)

19.  At all times during the Relevant Period, Aviv Hen was the owner and controlling person of Omega Knight.  Aviv Hen was a signatory on, opened, and controlled Omega Knight's bank accounts; managed the day-to-day operations of Omega Knight; entered into agreements with precious metals refineries on behalf of Omega Knight; and communicated with precious metals refineries on behalf of Omega Knight in connection with Omega Knight's operations and customer transactions.  (Compl. ¶ 43.)

**B.  Phase I of Omega Knight's Fraudulent Scheme (2013-2016)**

20.  In 2013, Omega Knight began soliciting customers for precious metals transactions.  (Compl. ¶ 44.)

21.  In August 2014, Omega Knight entered into a formal agreement ("Leveraged Metals Agreement") with a Florida-based precious metals refinery ("Florida Refinery") to facilitate the sale of leveraged precious metals to Omega Knight customers. (Compl. ¶ 45.) Aviv Hen signed the Leveraged Metals Agreement with the Florida Refinery on behalf of Omega Knight.  (Compl. ¶ 46.)

22.  The Leveraged Metal Agreement provided that Omega Knight could purchase precious metal on a leveraged basis from the Florida Refinery for resale to Omega Knight's customers.  (Compl. ¶ 47.)

23.  Pursuant to the Leveraged Metal Agreement, Omega Knight created operational sub-accounts under Omega Knight's Florida Refinery client ID to allow for segregation of Omega Knight's leveraged customer accounts.  All of these sub-accounts were in the name of, and controlled by, Omega Knight. (Compl. ¶ 48.)

24.  Omega Knight contracted with all its customers and, therefore, directly interacted with these leveraged precious metals customers on all

transactions. Omega Knight was, per the Leveraged Metal Agreement, responsible for all margin payments, finance, and storage charges owed to the Florida Refinery. (Compl. ¶ 49.)

25.    When Omega Knight sold customers metal on a leveraged basis, it did not deliver the full amount of purchased metal to those customers. (Compl. ¶ 50.)

26.    Some leveraged customers did not take delivery of any metal, but were told that Omega Knight would store their entire metal purchase for them. (Compl. ¶ 51.)

27.    During Phase I, Omega Knight made misrepresentations to induce customers to enter into fully-paid and leveraged precious metals transactions, as further described below. (Compl. ¶ 52.)

28.    Omega Knight also overstated the amount of interest and fees accrued by customer accounts to conceal its misappropriation of customer funds. (Compl. ¶ 53.)

**C.    Misappropriation of Customer Fund During Phase I**

29.    Omega Knight and Aviv Hen did not invest the full amount of money they received from customers, but instead misappropriated customer funds for personal expenditures. (*See* Compl. ¶ 54; Declaration of Patricia Gomersall in Support of Plaintiff's Motion for an Order of Default Final Judgment, Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants Omega Knight 2, LLC and Aviv Michael Hen ("Gomersall Decl.") ¶¶ 33-35.)

30.    Funds collected from customers during Phase I were deposited in Omega Knight's bank accounts (the "Phase I Bank Accounts"). Aviv Hen opened and controlled the Phase I Bank Accounts, and he was a signatory on these accounts. (Compl. ¶ 55.)

Omega Knight and Aviv Hen used customer funds deposited in the Phase I Bank Accounts for a variety of expenditures unrelated to their customers' precious metals transactions. (Compl. ¶ 56.)

31.    Aviv Hen used over $25,000 of Omega Knight customer funds deposited in the Phase I Bank Accounts at high-end restaurants. For example, on September 3, 2013, Aviv Hen spent $16,735 at B&B Steakhouse in New York, New York, paid for by Omega Knight's customers. (Compl. ¶ 57; Gomersall Decl. ¶ 35.)

32.    Aviv Hen used over $116,000 of customer funds for his car payments from the Phase I Bank Accounts, including a $34,000 down payment on a Mercedes-Benz. (Compl. ¶ 58; Gomersall Decl. ¶ 35.)

33.    Aviv Hen used $57,500 of customer funds from the Phase I Bank Accounts for a single purchase from Sotheby's, a high-end auction house. (Compl. ¶ 59; Gomersall Decl. ¶ 35.)

34.    Aviv Hen used over $25,000 of customer funds at high-end New York City clothing stores, from the Phase I Bank Accounts.  (Compl. ¶ 60; Gomersall Decl. ¶ 35.)

35.    Aviv Hen withdrew more than $59,000 in customer cash at ATM machines, from the Phase I Bank Accounts.  (Compl. ¶ 61; Gomersall Decl. ¶ 35.)

36.    Aviv Hen also transferred more than $650,000 of customer funds, from the Phase I Bank Accounts, to an "Aviv Hen, Inc." bank account that he personally controlled.  (Compl. ¶ 62; Gomersall Decl. ¶ 35.)

37.    In April 2016, shortly after a customer complained to the Florida Refinery that Omega Knight was refusing to deliver the silver he purchased, the Florida Refinery terminated its business relationship with Omega Knight. (Compl. ¶ 64.)

**D.    Phase II of Omega Knight's Fraudulent Scheme (April 2016 Through at Least June 2017)**

38.    After the Florida Refinery terminated its relationship with Omega Knight, Omega Knight entered into a new agreement with a Texas-based Refinery ("Texas Refinery") and a depository associated with the Texas Refinery. (Compl. ¶ 88.)

39.    Omega Knight's agreement with the Texas Refinery did not provide for leveraged precious metals transactions.  Moreover, Omega Knight's arrangement with the Texas Refinery did not provide for segregated accounts linked to specific Omega Knight customers.  (Compl. ¶ 89.)

40.    Omega Knight nonetheless continued to solicit customers for precious metals transactions.  (Compl. ¶ 90.)

41.    When Omega Knight sold customers precious metal on a fully-paid basis, it collected the full purchase price of the metal, but sometimes failed to deliver any purchased metal (or failed to deliver the full amount of purchased metal) to them.  Instead, Omega Knight told those customers that it would buy and store their precious metal purchase for them.  (Compl. ¶ 91.)

42.    On at least one occasion, Omega Knight falsely represented that it would buy and store a fully-paid customer's precious metals purchase.  In fact, Omega Knight did not purchase the full amount of metal for this customer and failed to store any metal whatsoever in a segregated account for this customer. When the customer attempted to liquidate his investment, Omega Knight refused to return any of the customer's funds.  (Compl. ¶¶ 102-117.)  Omega

Knight did not maintain segregated accounts linked to specific customers during Phase II.  (Compl. ¶ 92.)

43.    Funds collected from customers during Phase II were deposited in Omega Knight's bank accounts (the "Phase II Bank Accounts").   Aviv Hen opened and controlled the Phase II bank accounts, and he was the only signatory on these accounts.  (Compl. ¶ 93.)

44.    During Phase II, Omega Knight customer funds were commingled in the Phase II Bank Accounts with other funds unrelated to Omega Knight's business operations.  (Compl. ¶ 94.)

**E.**    **Misappropriation of Customer Funds During Phase II**

45.    Omega Knight and Aviv Hen used funds deposited in the Phase II Bank Accounts for a variety of expenditures unrelated to their customers' precious metals transactions.  (Compl. ¶ 95; Gomersall Decl. ¶¶ 33-35.)

46.    Aviv Hen spent over $80,000 at restaurants, including more than $54,000 at Prime 333 in New York City, from the Phase II Bank Accounts. (Compl. ¶ 96; Gomersall Decl. ¶ 35.)

47.    Aviv Hen withdrew over $140,000 at ATM machines from the Phase II Bank Accounts.  Many of these ATM machines were located in casinos. (Compl. ¶ 97; Gomersall Decl. ¶ 35.)

48.    Aviv Hen paid over $28,000 to a private jet charter service called Jetsmarter, from the Phase II Bank Accounts.  (Compl. ¶ 98; Gomersall Decl. ¶ 35.)

49.    Aviv Hen spent at least $29,000 at clothing stores from the Phase II Bank Accounts.  (Compl. ¶ 99; Gomersall Decl. ¶ 35.)

50.    Aviv Hen also transferred over $55,000, from the Phase II Bank Accounts, to an "Aviv Hen, Inc." bank account that he personally controlled. (Compl. ¶ 100; Gomersall Decl. ¶ 35.)

## III.    DEFAULT JUDGMENT IS PROPER

**A.**    **Omega Knight and Aviv Hen's Failure to Answer Warrants Entry of Default Final Judgment**

51.    Local Civil Rule 7.1 and Federal Rule of Civil Procedure 55(b) authorize the Commission to seek, and the Court to enter, default judgment against a party who has failed to plead or otherwise defend an action.  *See United States v. Swartout*, 293 F. Supp. 3d 1377, 1378 (S.D. Fla. 2018).

52.    As this Court has explained, under Federal Rule of Civil Procedure 55(b) a court may "enter a final judgment of default against a party who has failed to plead in response to a complaint."  *Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com*, No. 15-62579-CIV, 2016 WL 3369529, at *3 (S.D. Fla.

Apr. 12, 2016); *see also Swartout*, 293 F. Supp. 3d at 1378. "The entry of default constitutes an admission . . . [to] the well-pleaded allegations in the Complaint." *Abercrombie*, 2016 WL 3369529, at *3. Granting a motion for default judgment lies within a district court's sound discretion. *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

53.     Aviv Hen and Omega Knight were properly served with the Complaint and Summons on June 27, 2018 and June 28, 2018, respectively. (ECF Nos. 6, 9.) They failed to respond to the Complaint. Pursuant to the Court's August 8, 2018 Order (ECF No. 12) and Federal Rule of Civil Procedure 55(a), the Commission submitted applications for a Clerk's entry of default against Omega Knight (ECF No. 13) and Aviv Hen. (ECF No. 14.) On August 16, 2018, the Clerk of the Court entered a default against Omega Knight and Aviv Hen. (ECF No. 15.) Consequently, Omega Knight and Aviv Hen have admitted to all of the well-pleaded allegations in the Complaint. *See Swartout*, 293 F. Supp. 3d at 1378; *Abercrombie,* 2016 WL 3369529, at *3.

**B.     Jurisdiction and Venue**

54.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c(a) of the Act, 7 U.S.C. §13a-1(a) (2012), provides that district courts have jurisdiction to hear actions brought by the Commission.

55.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Omega Knight and Aviv Hen transacted business in the Southern District of Florida, and certain transactions, acts, and practices alleged in this Complaint occurred within this District.

**C.     The Well-Pleaded Facts of the Complaint Establish that Omega Knight and Aviv Hen Violated the Commodity Exchange Act**

**1.     Omega Knight and Aviv Hen Violated Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012) (Count III):  Illegal Off-Exchange Transactions**

56.     Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (2012), applies certain provisions of the Act to "any agreement, contract, or transaction in any commodity" that is entered into with, or offered to, a non-eligible contract participant "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis" (the aforementioned "leveraged precious metals transactions" or "retail commodity transactions"), subject to certain exceptions not applicable

here.  Section 2(c)(2)(D)(iii) of the Act, 7 U.S.C. § 2(c)(2)(D)(iii) (2012), is an enabling provision, making Sections 4(a) and 4b of the Act, 7 U.S.C. §§ 6(a) and 6b (2012), applicable to retail commodity transactions "as if" such transactions are contracts of sale of a commodity for future delivery.

57.    During the Relevant Period, the retail commodity transactions described in the Complaint were offered and entered into by Omega Knight and Aviv Hen: (a) on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis; (b) with persons who are not eligible contract participants ("ECPs") or eligible commercial entities as defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012); and (c) without being made or conducted on, or subject to, the rules of any board of trade, exchange, or contract market.  (Compl. ¶¶ 25-26, 31, 140.)   Pursuant to Section 2(c)(2)(D)(iii) of the Act, 7 U.S.C. § 2(c)(2)(D)(iii) (2012), the retail commodity transactions alleged herein are subject to Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012), as if they are contracts of sale of a commodity for future delivery.  (Compl. ¶ 141.)

58.    During the Relevant Period, Omega Knight and Aviv Hen violated Section 4(a) of the Act by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting or accepting orders for, or otherwise dealing in, any transaction in, or in connection with, retail commodity transactions. (Compl. ¶ 142.)   Each act of offering to enter into, executing, confirming the execution of, soliciting, or accepting an order for a retail commodity transaction with a non-ECP customer and conducting an office or business in the United States for that purpose during the Relevant Period was alleged in the Complaint as a separate and distinct violation of Section 4(a) of the Act. (Compl. ¶ 143.)

> **2. Omega Knight and Aviv Hen Violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2018) (Count I):  Fraud in Connection with Sales of Commodities in Interstate Commerce**

59.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), makes it unlawful for any person "to use or employ, or attempt to use or employ, in connection with . . . a contract of sale of any commodity in interstate commerce . . . any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate[.]"  (Compl. ¶¶ 21, 121.) Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2018), in relevant part, makes it unlawful for any person, in connection with a contract of sale of any commodity in interstate commerce, "to intentionally or recklessly: (1) Use or employ, or attempt to use or employ, any manipulative  device, scheme, or

artifice to defraud[.]"   When interpreting Section 6(c)(1) of the Act and Regulation 180.1(a), federal courts often apply cases analyzing Section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b) (2012), and SEC Rule 10b-5, 17 C.F.R. § 240.10B-5 (2018).   *See, e.g., CFTC v. Kraft Foods Grp.*, Inc., 153 F. Supp. 3d 996, 1008-09 (N.D. Ill. 2015) (using precedent under Section 10(b) of the Exchange Act and SEC Rule 10b-5 as guidance for interpreting Section 6(c)(1) and Regulation 180.1(a)); *CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1346-47 (S.D. Fla. 2014) (same).

60.   Accordingly, to prove a violation of Section 6(c)(1) and Regulation 180.1(a), the Commission must show that Omega Knight and Aviv Hen: (1) engaged in unlawful conduct (*i.e.*, made material misrepresentations or materially misleading omissions, issued false statements, or misappropriated customer funds); (2) in connection with the sale of a commodity in interstate commerce; (3) with scienter.   *Hunter Wise*, 21 F. Supp. 3d at 1347 (discussing elements required to prove a violation of Section 6(c)(1) of the Act); *see also CFTC v. S. Trust Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir. 2018).   The well-pleaded facts of the Complaint satisfy each of these three requirements.

61.   First, as the Complaint alleges, Omega Knight and Aviv Hen solicited and fraudulently induced customers to engage in fully-paid and leveraged precious metals transactions by misrepresenting their trading experience and expertise and making false representations regarding potential profits.   (Compl. ¶¶ 3, 42, 52, 66.)   Omega Knight and Aviv Hen failed to disclose that they only used a portion of customer funds to actually purchase precious metals and misappropriated the remainder.   (Compl. ¶¶ 4, 123-24.) Additionally, Omega Knight and Aviv Hen misappropriated customer funds to pay personal expenses, distribute purported "profits" and disbursements to other customers, and fund Omega Knight's operations.   (Compl. ¶¶ 5, 32-33, 54, 63.)   Through the issuance of false trade confirmations and account statements, and other communications to customers, Omega Knight and Aviv Hen concealed their misappropriation and fraudulent scheme.   (Compl. ¶¶ 6, 33, 53, 123-24.)   This conduct violated Regulation 180.1(a).

62.   In addition, Omega Knight and Aviv Hen's misrepresentations and misleading omissions were material and violated Regulation 180.1(a).   A statement or omitted fact is material if a reasonable investor would consider it important in making a decision to invest.   *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328-29 (11th Cir. 2002).   Indeed, any fact that enables customers to independently assess the risk inherent in their investment, and the likelihood of profit, is a material fact.   *See CFTC v. Kratville*, 796 F.3d 873, 895 (8th Cir. 2015) (misrepresentations related to profit potential and risk are material).   Omega Knight and Aviv Hen's misrepresentations were material

because a reasonable prospective investor would consider it important that Omega Knight and Aviv Hen failed to purchase all of the metal paid for, by their customers, and that Omega Knight's account statements were false. *CFTC v. Global Precious Metals Trading Co.*, No. 1:13-cv-21708, 2013 WL 5212237, at *5 (S.D. Fla. Sept. 12, 2013) (defendant violated Section 6(c)(1) and Regulation 180.1(a) by misappropriating funds and making misrepresentations in connection with the sale of precious metals).

63.     Moreover, Omega Knight and Aviv Hen's misappropriation of customer funds violated Section 6(c)(1) of the Act and Regulation 180.1(a).  *See Global Precious Metals*, 2013 WL 5212237, at *5*; CFTC v. Smithers*, No. 9:12-cv-81165-KAM, 2013 WL 4851684, at *7-8 (S.D. Fla. July 31, 2013) (finding that defendant violated Section 6(c)(1) of the Act and Regulation 180.1(a) by, among other things, misappropriating customer funds intended for physical precious metals purchases); *CFTC v. Leben*, No. 3:14-cv-866-TLW, 2016 WL 7354359, at *5 (D.S.C. Aug. 5, 2016) (granting summary judgment and holding that defendant violated Section 6(c)(1) of the Act and Regulation 180.1(a) by, among other things, misappropriating investor funds for personal use).

64.     Second, the well-pleaded allegations in the Complaint establish that Omega Knight and Aviv Hen's unlawful conduct occurred in connection with sales of commodities in interstate commerce.  In the context of Section 10(b) of the Exchange Act and SEC Rule 10b-5, and, consequently, under Section 6(c)(1) of the Act and Regulation 180.1(a), the "in connection with" requirement is satisfied where the purchase or sale of securities and the fraud are "not independent events."  *SEC v. Zandford*, 535 U.S. 813, 819-21 (2002); *see also Grippo v. Perazzo*, 357 F.3d 1218, 1223-24 (11th Cir. 2004) (accord). The "in connection with" requirement is construed broadly; that is, courts are inclined to consider fraudulent acts precipitating the purchases of commodities as connected.  *See Hunter Wise*, 21 F. Supp. 3d at 1346-47; *see also SEC v. Hasho*, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992).

65.     Omega Knight and Aviv Hen's unlawful conduct in furtherance of their fraudulent scheme, as alleged in the Complaint, occurred in connection with sales of commodities in interstate commerce.  The precious metals discussed in the Complaint are commodities, as defined by Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2012), in interstate commerce, as defined by Section 1a(30) of the Act, 7 U.S.C. § 1a(30) (2012).  (Compl. ¶¶ 119-20.)  Defendants made numerous false statements to induce customers to enter into leveraged and fully-paid precious metals transactions, and Omega Knight and Aviv Hen received at least $5.5 million from at least 90 customers in connection with these transactions that constituted sales of commodities in interstate commerce.  (Compl. ¶ 3.)  As part of their scheme to defraud customers in

connection with precious metals transactions, Omega Knight and Aviv Hen used the mails or other instrumentalities of interstate commerce to: (1) receive checks from customers; (2) disseminate investment solicitations via e-mail to customers; and (3) disseminate false account statements to customers. (Compl. ¶ 125.)  *See, e.g., CFTC v. McDonnell*, 287 F. Supp. 3d 213, 229 (E.D.N.Y. 2018 ).

66.    Third, the well-pleaded allegations of the Complaint establish that Omega Knight and Aviv Hen acted with scienter.   To prove scienter, the Commission must show that Omega Knight and Aviv Hen's conduct was either intentional or reckless—a standard that is satisfied when a defendant "intended to defraud, manipulate, or deceive, or if [a] [d]efendant's conduct represents an extreme departure from the standards of ordinary care." *R.J. Fitzgerald*, 310 F.3d at 1328 (discussing the scienter element in the context of analogous Section 4b(a)(2) claims; *see also Kraft Foods Grp.*, 153 F. Supp. 3d at 1015 (discussing the scienter element in the context of fraud claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5 and adopting this scienter standard for analogous Section 6(c)(1) and Regulation 180.1(a) claims).

67.    To prove that Omega Knight and Aviv Hen's conduct is intentional, the Commission must demonstrate that it is "intentional as opposed to accidental." *Lawrence v. CFTC*, 759 F.2d 767, 773 (9th Cir. 1985).  To prove that Omega Knight and Aviv Hen's conduct is reckless, the Commission must show that it "departs so far from the standards of ordinary care that it is very difficult to believe the [actor] was not aware of what he was doing." *Drexel Burnham Lambert Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) (internal quotation marks omitted).

68.    The scienter requirement can be satisfied when conduct: (1) involves highly unreasonable omissions or misrepresentations; (2) presenting a danger of misleading retail customers; and (3) is either known to a defendant or so obvious that a defendant must have been aware of it.  *Hunter Wise*, 21 F. Supp. 3d at 1339 (internal quotation marks and citation omitted) (defendants acted recklessly and intentionally to deceive and defraud retail customers in context of Section 4b(a)(2) violations).  This same scienter standard applies to prove a violation of Section 6(c)(1) of the Act and Regulation 180.1(a).  *See CFTC v. S. Trust Metals, Inc.*, No. 1:14-CV-22739, 2016 WL 4523851, at *5, *7 (S.D. Fla. Aug. 29, 2016), *aff'd in relevant part*, 880 F.3d 1252 (11th Cir. 2018).

69.    The well-pleaded allegations in the Complaint show that Omega Knight and Aviv Hen acted knowingly, or at the very least, with reckless disregard for the truth.  Aviv Hen was a signatory to, opened, and controlled Omega Knight's bank accounts and he managed Omega Knight's day-to-day operations.  (Compl. ¶¶ 18, 43.)  Aviv Hen knew that he and Omega Knight

used only part of the total funds collected from customers to purchase precious metals and he failed to disclose this fact.  (Compl. ¶¶ 9, 91, 102, 124.)  Instead, Aviv Hen misappropriated Omega Knight customer funds.  (Compl. ¶¶ 54-56, 93-100.)   Omega Knight and Aviv Hen issued false trade confirmations, account statements, and other communications that mispresented the value of Omega Knight customers' precious metals investments, and accordingly, concealed Omega Knight and Aviv Hen's misappropriation of customer funds. (Compl. ¶¶ 6, 9, 33, 70, 74, 80, 110.)   As explained above, Aviv Hen knew these statements were false.  Therefore, Omega Knight and Aviv Hen acted with the requisite scienter.   Thus, they violated Section 6(c)(1) of the Act and Regulation 180.1(a).

### 3. Omega Knight and Aviv Hen Violated 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) (Count II):  Fraud in Connection with Illegal Off-Exchange Transactions

70.   Omega Knight and Aviv Hen also violated Section 4b(a)(2)(A)-(C) of the Act in connection with their aforementioned retail commodity transactions. (Compl. ¶ 134.)   Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), in relevant part, makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with any other person, other than on or subject to the rules of a designated contract market: (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement, or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for, on behalf of, or with the other person.

71.   The same fraudulent conduct set forth in the Complain that violates Section 6(c)(1) of the Act and Regulation 180.1(a)—also violates Section 4b(a)(2).  *See S. Trust Metals*, 2016 WL 4523851, at *5-7, *12; *Hunter Wise*, 21 F. Supp. 3d at 1346-48 (same).  Accordingly, to establish that Omega Knight and Aviv Hen violated Section 4b(a)(2)(A)-(C) through misrepresentations, omissions, false statements, and misappropriation, the Commission must prove that: (1) a misrepresentation, omission, false statement, or misappropriation was made; (2) with scienter; and (3) the misrepresentation, omission, false statement, or misappropriation was material.   *See R.J. Fitzgerald*, 310 F.3d at 1328-30; *CFTC v. Driver*, 877 F. Supp. 2d 968, 977-78 (C.D. Cal. 2012); *CFTC v. Schafer*, No. Civ.A. H-96-1213, 1997 WL 33547409, at

*4-7 (S.D. Tex. Dec. 23, 1997).  For all the factual reasons delineated above, in reference to violations of Section 6(c)(1) and Regulation 180.1(a) (*see* Section C(2) at 5, *supra*), Omega Knight and Aviv Hen also violated Section 4b(a)(2)(A)-(C).

72.    While Section 6(c)(1) of the Act and Regulation 180.1(a) apply broadly to sales of any commodity "in interstate commerce," Section 4b(a)(2) of the Act only applies to contracts of sale of any commodity "for future delivery." Pursuant to Section 2(c)(2)(D)(iii) of the Act, 7 U.S.C. § 2(c)(2)(D)(iii) (2012), the retail commodity transactions alleged in the Complaint are subject to Section 4b of the Act, 7 U.S.C. § 6b (2012), as if they are contracts of sale of a commodity for future delivery.  (Comp. ¶ 132.)  As such, Omega Knight and Aviv Hen's violations of Section 4b(a)(2)(A)-(C) of the Act alleged in the Complaint apply to their unlawful conduct in connection with leveraged precious metals transactions.  (Compl. ¶ 134.)  Thus, Omega Knight and Aviv Hen violated Section 4b(a)(2)(A)-(C) of the Act.

### 4. Omega Knight Violated Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012) (Count IV):  Failure to Register as a Futures Commission Merchant

73.    In pertinent part, Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012), defines a futures commission merchant ("FCM") as "an individual, association, partnership, corporation, or trust . . . engaged in soliciting or in accepting orders for . . . any agreement, contract, or transaction described in . . . section 2(c)(2)(D)(i) [of the Act]; and accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."  (Compl. ¶ 29.)  Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012), provides that it shall be unlawful for any person to be an FCM unless such person is registered with the Commission in that capacity.  (Compl. ¶ 148.)

74.    During the Relevant Period, Omega Knight, through its managers, employees, and agents, acted as an FCM by soliciting and accepting orders for agreements, contracts, or transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (2012) (the aforementioned retail commodity transactions), and, in or in connection with those transactions, accepting funds from customers.  (Compl. ¶ 147.)  Omega Knight failed to register with the Commission as an FCM, and therefore violated Section 4d(a)(1) of the Act. (Compl. ¶ 149.)  *See CFTC v. Hunter Wise Commodities, LLC*, 1 F. Supp. 3d 1311, 1325 (S.D. Fla. 2014).

### 5. Aviv Hen Is Liable for Omega Knight's Violations

75.    Taken as true, the well-pleaded allegations of the Complaint establish that Aviv Hen is liable for Omega Knight's violations as a controlling

person.  "The entry of default constitutes an admission . . . [to] the well-pleaded allegations in the Complaint."  *Abercrombie,* 2016 WL 3369529, at \*3.  Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), provides, in relevant part provides that any person who, directly or indirectly, controls any person who has violated any provision of the Act or Regulations may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person.  The fundamental purpose of this controlling person liability provision of the Act is "to reach behind the corporate entity to the controlling individuals of the corporation and to impose liability for violations of the Act directly on such individuals as well as on the corporation itself."  *Hunter Wise*, 21 F. Supp. 3d at 1350 (quotations omitted).

76.    To establish controlling-person liability under Section 13(b) of the Act, the Commission must show both (1) control; and (2) lack of good faith or knowing inducement of the acts constituting the violation.  *Id.*; *In re First Nat'l Trading Corp.*, CFTC Nos. 90-28 and 92-17, 1994 WL 378010, at \*11 (July 20, 1994).

77.    To establish the first element, control, the Commission must show that a defendant controlling-person possessed "general control" over the operation of the entity principally liable.  *Hunter Wise*, 21 F. Supp. 3d at 1350.  Evidence that a defendant controlling-person is an owner, officer, principal, or the authorized signatory on the company's bank accounts indicates general control.  *Id.*  Aviv Hen, at all relevant times, was an owner and principal of Omega Knight.  (Compl. ¶ 18.)  Aviv Hen was a signatory to, opened, and controlled Omega Knight's bank accounts and managed the day-to-day operations of Omega Knight.  (Compl. ¶ 43.)  As such, Aviv Hen had general control over Omega Knight.

78.    To establish the second element of controlling-person liability, the Commission must show that a defendant controlling-person lacked good faith or knowingly induced the conduct constituting the violations at issue.  *R.J. Fitzgerald*, 310 F.3d at 1334; *Hunter Wise*, 21 F. Supp. 3d at 1350.  The Commission may therefore meet the required second element by establishing that "the controlling person had actual or constructive knowledge of the core activities that make up the violation at issue and allowed them to continue."  *Id.* (citations omitted); *Hunter Wise*, 21 F. Supp. 3d at 1350 (internal quotation marks and citation omitted).

79.    Aviv Hen entered into agreements with precious metals refineries on behalf of Omega Knight that enabled it to solicit and accept orders for leveraged and fully-paid precious metals transactions, thereby facilitating its fraudulent scheme.  (Compl. ¶¶ 43, 45-47, 88-90.)  Aviv Hen communicated with precious metals refineries on behalf of Omega Knight in connection with

Omega Knight's operations and customer transactions.  (Compl. ¶ 43.)  He knew that Omega Knight did not actually deliver, or in some instances purchase or store, the full amount of physical precious metals for its customers.  (Compl. ¶¶ 43, 48-53, 91-93.)  He also misappropriated customer funds in the Omega Knight bank accounts that he opened and controlled.  (Compl. ¶¶ 54-55, 93-95.)  As such, Aviv Hen had actual knowledge of the conduct constituting Omega Knight's violations of the Act and Regulations as alleged in the Complaint, and both allowed and helped it to continue.

80.    Because Aviv Hen controlled Omega Knight and knowingly induced the acts constituting its violations of the Act and Regulations, pursuant to Section 13(b) of the Act, Aviv Hen is liable as a controlling person for each of Omega Knight's violations of violations of Sections 4(a), 4b(a)(2)(A)-(C), 4d(a)(1), and 6(c)(1) of the Act and Regulation 180.1(a) as alleged in the Complaint.  (Compl. ¶¶ 43, 129, 137, 144, 150.)  *See Hunter Wise*, 21 F. Supp. 3d at 1350-51; *CFTC v. Oakmont Fin., Inc.*, No. 16-80055-CIV, 2017 WL 9963325, at *5 (S.D. Fla. Jan. 19, 2017).

### 6. Omega Knight Is Liable for Its Agents' Violations

81.    Taken as true, the well-pleaded allegations of the Complaint establish that Omega Knight is liable for the violations of its employees or agents, including Aviv Hen and Eric Hen.  "The entry of default constitutes an admission . . . [to] the well-pleaded allegations in the Complaint."  *Abercrombie*, 2016 WL 3369529, at *3.  Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), along with Regulation 1.2, 17 C.F.R. § 1.2 (2018), imposes strict liability upon principals for the actions of their agents acting within the scope of their employment.  *See Clayton Brokerage Co. of St. Louis Inc. v. CFTC*, 794 F.2d 573, 581 (11th Cir. 1986); *CFTC v. Gutterman*, No. 12-21047-CIV, 2012 WL 2413082, at *7 (S.D. Fla. June 26, 2012).

82.    Because the acts, omissions, and failures of Aviv Hen, Eric Hen, and other employees and agents of Omega Knight as described in the Complaint occurred within the scope of their employment, agency, or office with Omega Knight (Compl. ¶¶ 130, 138, 145, 151), pursuant to Section 2(a)(1)(B) of the Act and Regulation 1.2, Omega Knight is liable as a principal for each act, omission, and failure of Aviv Hen, Eric Hen, and Omega Knight's other employees and agents constituting violations of Sections 4(a), 4b(a)(2)(A)-(C), 4d(a)(1), and 6(c)(1) of the Act and Regulation 180.1(a).  *See Oakmont Fin.*, 2017 WL 9963325, at *5 (finding the corporate entity defendant liable for its employees' violations of the Act).

### D.    <u>Omega Knight and Aviv Hen Failed to Provide a Meritorious Defense</u>

83.    Omega Knight and Aviv Hen have not shown a meritorious defense to the action.  In order to establish a meritorious defense, the moving party

"must make an affirmative showing of a defense that is likely to be successful." *In re Worldwide Sys., Inc.*, 328 F.3d 1291, 1296 (11th Cir. 2003) (quoting *Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986)).  As Omega Knight and Aviv Hen have presented no facts to the Court, and have not denied any allegation of the Complaint, they have not shown a meritorious defense.

**E.      The Commission Will Be Prejudiced if Default Judgment Is Not Entered**

84.      Plaintiff will suffer prejudice if default judgment is not entered. Congress has charged Plaintiff with enforcing the Act to protect customers in the commodity futures markets.  The Act is a "remedial statute that serves the crucial purpose of protecting the innocent individual investor—who may know little about the intricacies and complexities of the commodities market—from being misled or deceived." *Hunter Wise,* 21 F. Supp. 3d at 1337 (quoting *R.J. Fitzgerald*, 310 F.3d at 1329).  Absent default judgment, Plaintiff will be frustrated in its ability to fulfill its mandate. *See SEC v. Fortitude Grp., Inc.*, C.A. No. 16-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (entering default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" absent judgment).

85.      Accordingly, the Court hereby **ENTERS** default judgment against Omega Knight and Aviv Hen pursuant to Local Civil Rule 7.1 and Federal Rule of Civil Procedure 55(b) and **ORDERS** the relief set forth below.

**IV.      RELIEF**

**IT IS HEREBY ORDERED THAT:**

**A.      Permanent Injunction**

86.      The well-pleaded allegations of the Complaint warrant a permanent injunction against Omega Knight and Aviv Hen that prohibits them from registering with the Commission and participating in the markets regulated by the Commission.   The Commission may seek permanent injunctive relief "[w]henever it shall appear to the Commission that any . . . person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of [this Act] or any rule, regulation, or order thereunder[.]"  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012).  Section 6c(b) of the Act, 7 U.S.C. §13a-1(b) (2012), provides in pertinent part that "[u]pon a proper showing, a permanent  injunction . . . shall be granted without bond."  Unlike private actions for equitable relief, a Commission action for injunctive relief is a creature of statute.  "In actions for a statutory injunction, the agency need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits." *CFTC v. Muller*, 570 F.2d

1296, 1300 (5th Cir. 1978).[2]   The Commission need only show that Omega Knight and Aviv Hen violated the Act and are reasonably likely to commit future violations.  *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250-51 (2d Cir. 1986); *CFTC v. U.S. Metals Depository Co.*, 468 F. Supp. 1149, 1161-62 (S.D.N.Y. 1979).

87.   To obtain a permanent injunction, "the CFTC must show that 'there is a likelihood that, unless enjoined, the violations will continue.'"  *CFTC v. Kelly*, 736 F. Supp. 2d 801, 804 (S.D.N.Y. 2010) (*quoting Am. Bd. of Trade, Inc.*, 803 F.2d at 1250-51).  "Whether a likelihood of future violations exists depends on the totality of the circumstances."  *CFTC v. Altamont Glob. Partners, LLC*, No. 6:12-cv-1095-Orl-31TBS, 2014 WL 644693, at *10 (M.D. Fla. Feb. 19, 2014) (citing *Gutterman*, 2012 WL 2413082, at *7).  A district court may infer a likelihood of future violations from a defendant's past unlawful conduct.  *CFTC v. Crown Colony Options, Ltd.*, 434 F. Supp. 911, 919 (S.D.N.Y. 1977).  Further, "past illegal conduct is highly suggestive of the likelihood of future violations."  *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975).

88.   Injunctive relief need not be limited to prohibitions against future violations and may include prohibitions against all trading activity—such as the permanent registration and trading bans against Omega Knight and Aviv Hen that the Commission seeks here.  *See, e.g., CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346-47 (11th Cir. 2008) (upholding district court's permanent injunction prohibiting defendants from "engaging in any commodity-related activity"); *CFTC v. Noble Wealth Data Info. Servs.*, 90 F. Supp. 2d 676, 692 (D. Md. 2000).

89.   Omega Knight and Aviv Hen's scheme to defraud at least 90 customers in connection with precious metals transactions—including their numerous false statements to induce customers to enter into such transactions and their misappropriation of most of the $5.5 million customer funds they received—warrants entry of a permanent injunction, including permanent registration, and trading bans.  Omega Knight and Aviv Hen failed to use all of the customer funds they collected to purchase metal for their customers' precious metals transactions and instead misappropriated customer funds. (Compl.  ¶¶  32-33, 54-63, 95-101.)   Through the issuance of false trade confirmations and account statements and other communications to customers, Omega Knight and Aviv Hen concealed their misappropriation and fraudulent scheme.  (Compl. ¶¶ 3, 6, 33, 42, 45, 67-75, 79, 82, 110, 112.) Moreover, Omega Knight and Aviv Hen's leveraged precious metals transactions

---

[2] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

constituted illegal, off-exchange retail commodity transactions. (Compl. ¶¶ 140-43.)   Notably, Omega Knight and Aviv Hen's leveraged precious metals transactions never resulted in the actual delivery of the full amount of metal purchased by their customers.  (Compl. ¶ 4.)  As part of Omega Knight and Aviv Hen's scam, Omega Knight acted as an unregistered FCM.  (Compl. ¶¶ 147-49.)

90.   Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Omega Knight and Aviv Hen are permanently restrained, enjoined, and prohibited from directly or indirectly:

(a)   In connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly:  (1) using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; (2) making, or attempting to make, any untrue or misleading statement of a material fact or omitting to state a material fact necessary in order to make the statements made not untrue or  misleading; or (3) engaging, or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in violation of 6(c)(1) of the Act,  7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2018);

(b)   In or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market:  (1) cheating or defrauding or attempting to cheat or defraud the other person; (2) willfully making or causing to be made to the other person any false report or statement or willfully entering or causing to be entered for the other person any false record; or (3) willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or with the other person, in violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012);

(c)   Offering to enter into, executing, confirming the execution of, or conducting any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for

the purchase or sale of a commodity for future delivery not conducted on or subject to the rules of a board of trade that has been designated by or registered with the Commission as a contract market, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012); and

(d) Directly or indirectly acting as a futures commission merchant (as that term is defined in Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012)) without being registered with the Commission in that capacity, in violation of Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a) (2012).

91. Omega Knight and Aviv Hen are also permanently restrained, enjoined, and prohibited from directly or indirectly:

(a) Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

(b) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018) for their own personal accounts or for any account in which they have a direct or indirect interest;

(c) Having any commodity interests traded on their behalf;

(d) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(e) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(f) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9) (2012), 17 C.F.R. § 4.14(a)(9) (2018);

(g) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration, or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and

(h) Engaging in any business activity related to commodity interests.

**B.**   **Disgorgement**

92.    Omega Knight and Aviv Hen shall pay, jointly and severally, disgorgement in the amount of **$3,814,257** ("Disgorgement Obligation"), representing the gains received in connection with such violations.   If the Disgorgement Obligation is not paid immediately, post-judgment interest shall accrue on the Disgorgement Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

93.    Omega Knight and Aviv Hen shall make payments of the Disgorgement Obligation to the National Futures Association ("NFA") ("Monitor") and the Monitor shall collect disgorgement payments from Omega Knight and Aviv Hen and make distributions as set forth below.   Because the Monitor is acting as an officer of this Court in performing these services, the Monitor shall not be liable for any action or inaction arising from the Monitor's appointment, other than actions involving fraud.

94.    Omega Knight and Aviv Hen shall make Disgorgement Obligation payments under this Order to the Monitor in the name " Omega Knight 2, LLC Fund" and shall send such Disgorgement Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois  60606, under a cover letter that identifies Omega Knight and Aviv Hen and the name and docket number of this proceeding.   Omega Knight and Aviv Hen shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

95.    The Monitor shall oversee the Disgorgement Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Omega Knight's customers or may defer distribution until such time as the Monitor deems appropriate.   In the event that the amount of Disgorgement Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such disgorgement payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth below.

96.    Omega Knight and Aviv Hen shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Omega Knight's customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any

Disgorgement Obligation payments.  Omega Knight and Aviv Hen shall execute any documents necessary to release funds that they have in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Disgorgement Obligation.

97.    The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Omega Knight customers during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

98.    The amounts payable to each customer shall not limit the ability of that customer from proving that a greater amount is owed from Omega Knight and Aviv Hen or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

99.    Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Omega Knight who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the Disgorgement Obligation that has not been paid by Omega Knight and Aviv Hen, to ensure continued compliance with any provision of this Order, and to hold Omega Knight and Aviv Hen in contempt for any violations of any provision of this Order.

100.  To the extent that any funds accrue to the U.S. Treasury for satisfaction of Omega Knight and Aviv Hen's Disgorgement Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

101.  Included in Omega Knight and Aviv Hen's Disgorgement Obligation is $275,000 paid to Eric Hen.  On July 17, 2019, this Court entered the Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief Against Defendant Erez Hen ("Consent Order") that fully resolved and settled all claims against Eric Hen in the Complaint and requires him to pay $275,000 in disgorgement ("Eric Hen's Disgorgement Obligation").  (ECF No. 34.)  Accordingly, Omega Knight and Aviv Hen are jointly and severally liable for Eric Hen's Disgorgement Obligation.  To the extent that any funds accrue to the U.S. Treasury for satisfaction of Eric Hen's Disgorgement Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

### C.   Civil Monetary Penalty

102.   Omega Knight and Aviv Hen shall jointly pay a civil monetary penalty in the amount of **$11,442,771** ("CMP Obligation"), plus post-judgment interest.   If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).   Omega Knight and Aviv Hen shall pay their CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.   If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK   73169
> Telephone: (405) 954-6569
> Fax: (405) 954-1620
>    9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Omega Knight and Aviv Hen shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions.   Omega Knight and Aviv Hen shall accompany payment of the CMP Obligation with a cover letter that identifies the payor and the name and docket number of this proceeding.   Omega Knight and Aviv Hen shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

### D.   Miscellaneous Provisions

103.   Partial Satisfaction:   Acceptance by the CFTC of any partial payment of the Disgorgement Obligation or the CMP Obligation shall not be deemed a waiver of Omega Knight and Aviv Hen's obligations to make further payments pursuant to this Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

104.   Any payments received from Omega Knight and Aviv Hen pursuant to this Order shall be applied first to satisfy his Disgorgement Obligation.

105.   Notice:   All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested as follows:

Notice to Commission:
Paul G. Hayeck
Deputy Director
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581

Notice to Monitor:
Office of Administration
National Futures Association
300 South Riverside Plaza, Suite 1800
Chicago, Illinois  60606-3447

All such notices to the Commission shall reference the name and docket number of this action.

106.  Change of Address/Phone:  Until such time as Omega Knight and Eric Hen satisfy in full their Disgorgement Obligation and CMP Obligation as set forth in this Order, they shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

107.  Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, the remainder of the Order and the application of its provisions to any other person or circumstance shall not be affected by the holding.

108.  Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Order shall be binding upon Omega Knight and Aviv Hen, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, email, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Omega Knight and Aviv Hen.

109.  Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Omega Knight and Aviv Hen to modify, or for relief from, the terms of this Order.

110.  There being no just reason for delay, the Clerk of the Court is hereby instructed to enter this Order of Default Final Judgment, Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants Omega Knight and Aviv Hen forthwith and without further notice.

(Continued on following page)

**Done and ordered** in chambers, at Miami, Florida, on September 13, 2019.

_____
Robert N. Scola, Jr.
United States District Judge